GEORGENE CHRISTENSEN, Plaintiff-Appellee, v. KENNETH CHRISTENSEN, Defendant-Appellant.

(No. 75-232; ■■■■■■■■■

Second District (1st Division)—September 22, 1975.

Jack Donohue, of Donohue & Duffy, of Oak Brook, for appellant.

G. K. Erickson, of Lake Villa, for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant appeals from an order granting permanent custody of children to the plaintiff following a divorce.

A decree for divorce was entered on February 28, 1975, on the basis of a default hearing held on May 11, 1973. At the hearing the court granted the divorce on the wife's complaint subject to the presentment of a final decree. By agreement of the parties the children of the parties,

Kenneth born August 4, 1968, and Dennis born June 27, 1970, were to remain temporarily in the custody of the plaintiff subject to visitation by the defendant.

At a subsequent hearing on October 4, 1973, the parties agreed that because of the plaintiff's economic circumstances the temporary custody of the children should go to the husband. When the decree was presented and signed on February 28, 1975, the question of permanent custody of the children was reserved. At a later hearing the court awarded permanent custody to the wife.

■■ The plaintiff has not filed a brief.[1] However, since the case involves the interests of the minor children we will consider the matter on its merits rather than exercise our discretion to reverse the case pro forma. See, *e.g.*, *Hawkins v. Richardson* (1975), 29 Ill.App.3d 597, 598-99, 331 N.E.2d 201, 202.

Defendant argues that the award of permanent custody to the plaintiff was contrary to the manifest weight of the evidence. We disagree and affirm.

The trial court has a broad discretion to decide the issue of custody based on the children's best interests. (*People ex rel. Morris v. Morris* (1969), 44 Ill.2d 66, 68; *Marcus v. Marcus* (1974), 24 Ill.App.3d 401, 406.) The decision of the trial court awarding custody will not be disturbed unless it will cause a manifest injustice (*People ex rel. Bukovich v. Bukovich* (1968), 39 Ill.2d 76, 83), or unless it is against the manifest weight of the evidence. *Huey v. Huey* (1975), 25 Ill.App.3d 20, 21; *Marcus v. Marcus* (1974), 24 Ill.App.3d 401, 407; *Patton v. Armstrong* (1974), 16 Ill.App.3d 881, 883.

■■ In reviewing the exercise of discretion by the trial court there is no inflexible rule that the custody of children, even of tender age, be vested in the mother (*Marcus v. Marcus* (1971), 24 Ill.App.3d 401, 407; *Pratt v. Pratt* (1975), 29 Ill.App.3d 214, 216, 330 N.E.2d 244, 246), but the fact that an infant of tender years may benefit by being placed in the custody of its mother is a fact to be considered. *Nye v. Nye* (1952), 411 Ill. 408, 414; *Mulvihill v. Mulvihill* (1974), 20 Ill.App.3d 440, 444.

The trial judge conducted a full evidentiary hearing before reaching

---

[1] Following the filing of the notice of appeal the defendant moved in this court to stay the judgment pending appeal which we ordered taken with the case and on our motion advanced the cause for an early hearing upon a short briefing schedule. The defendant's brief was filed when due. The attorney for the plaintiff appeared on the date set for oral argument without having filed a brief and was denied permission to argue. We express strong disapproval of counsel's failure to file a brief for which no adequate explanation was offered.

his decision. The plaintiff testified that when she agreed to give temporary custody of the children to the defendant in October of 1973, she had economic difficulties and lived in one room. She therefore agreed it would be better for the children to stay with defendant's family until she got a bigger place. She testified that she continued regular visitation with the children; that at the time of her hearing she was living in an apartment which contained two bedrooms, a dining room, a big kitchen, a fenced-in yard and a patio which she had furnished; that she was working at a bar and earning approximately $130 a week; and that she would be able to arrange working hours from 6 a.m. to noon. She further testified that she resided in the apartment with Don Gusterine who was separated from his wife; but that they expected to get married when Gusterine was divorced, possibly in the next month or two. She said that Gusterine earned $450 a week and had a substantial home which they would remodel and live in. She also testified that although there were occasions when Gusterine stayed in the apartment while the children were with her on visits, the children slept with her in the bedroom while Gusterine slept in another room. She said that Gusterine was very good with the children and that they got along very well with him. She also testified that she had made arrangements to have the woman upstairs sit with the children while she was working and that upon her marriage she would not be working.

The sister of plaintiff testified that plaintiff was a good mother and that the defendant had been living in his mother's home and at various times was unemployed.

Gusterine testified that he and the plaintiff were to be married as soon as he got his divorce. He further testified that the plaintiff was a good mother. He corroborated the plaintiff's testimony that on the two times the children stayed over night at the apartment when he was present that he slept in the living room while plaintiff slept with the children in the bedroom. He also testified that on one occasion the defendant, accompanied by the children, came to the tavern where plaintiff was working, that he had been drinking, created a row, and was then involved in an automobile accident which hospitalized the children.

The defendant testified that the children were not dressed properly before he took custody; that since the entry of the divorce decree he had remarried; that prior to that he had lived with the children at his parents' home; and that when he was unemployed he took care of the children. Presently he had a one-bedroom apartment with his wife; that there were two beds for the children, one a fold-up and one in the dining room; that he was renting a new apartment next door where the children

would have their own room; that he was presently assistant manager of the Clark Oil Station; that his wife was working and would take care of the children on her off hours and at other times she would take the older boy to school and the younger child to a babysitter's. He also testified to the fact that his parents lived in the area and that his sister and brother-in-law lived a few blocks away and had somewhat older children who would play with his children. Defendant's wife testified that she got along very well with the children; and that defendant was a good father to them.

At the conclusion of the hearing the trial judge concluded that both parties were suited to have custody of the children; that the situation had developed now so that both of them had a place where the children could be cared for, that both had sufficient means to provide a home and necessary support, but that it would be in the best interests of the children to be in the custody of their mother subject to reasonable visitation rights of the father. On this basis he awarded permanent custody to the plaintiff.

Defendant's contention that the ruling of the trial court is against the manifest weight of the evidence is based principally on the fact that plaintiff is living with a person not her husband which he contends makes her unfit; and on the other circumstances which he claims weigh in favor of custody by the father in the children's best interests.

■■ The fact that a mother lives as husband and wife with another man prior to a divorce decree based on the adultery of the mother does not require the reviewing court to find an abuse of discretion when the mother's conduct is found by the trial court not to be detrimental to the best interests of the child. (See *Nye v. Nye* (1952), 411 Ill. 408, 415.) It is true that the moral climate in which children are to be raised is an important consideration for the court and that adultery is a reflection on the mother's moral values (see *Mulvihill v. Mulvihill* (1974), 20 Ill.App. 3d 440, 444); and that an illicit relationship performed in the presence of minor children and to which they are exposed may not be condoned. (See *Nickell v. Nickell* (1969), 112 Ill.App.2d 330 (abstract opinion).) We have also upheld, however, the granting of custody of children to a mother under circumstances in which she had allowed her paramour, who was a convicted felon, to live with her for a short time with no evidence that the children were aware of the misconduct and with the further circumstance that the parties subsequently married. See *Van Buskirk v. Van Buskirk* (1974), 19 Ill.App.3d 647 (abstract opinion).

■■ On the whole record before us it is apparent that the trial judge carefully considered the circumstances and concluded that the plaintiff was living with a man she intended to marry and that her conduct, although technically adultery, did not adversely affect the children. He

also found from the evidence that granting custody to the mother was in the children's best interests. In view of the broad discretion of the trial judge in these matters we will not interfere with his judgment.

Judgment affirmed.

GUILD and HALLETT, JJ., concur.